IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ELISA SUAREZ, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05 C 4915 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| SACRED HEART HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pro se plaintiff Elisa Suarez has sued defendant Sacred Heart Hospital, her former employer, alleging that her employment was terminated in violation of the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 621 et seq. Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the motion is granted.

### FACTS[1]

Plaintiff was employed as a laboratory technologist for defendant, a community hospital located on the west side of Chicago, Illinois. Plaintiff was hired in December 2002 and assigned to the Chemistry II department, where her duties included: (1) urinalysis testing to determine if female patients were pregnant; (2) chemical testing of patients undergoing therapeutic drug treatment to determine the level of drugs in each patient's system, which is necessary to regulate medication dosage; (3) chemical enzyme testing for cardiac patients to determine the level of

---

[1] Unless otherwise noted, the following facts, taken from defendant's L.R. 56.1 statement and attached exhibits, are not in dispute. Because plaintiff did not admit or deny the facts contained in defendant's statement of facts, despite being given the required pro se notice regarding her obligations to do so, those facts are deemed admitted. N.D. Ill. Local Rule 56.1(b)(3)(B); Koszola v. Bd. of Educ. of the City of Chicago, 385 F.3d 1104, 1107-08 (7th Cir. 2004).

destruction to patients' hearts; and (4) PSA testing, which analyzes blood chemistry to detect the presence of abnormalities in the prostate.

On August 18, 2003, plaintiff was disciplined for mislabeling patient specimen tubes, which resulted in the collection of erroneous test results. Plaintiff's supervisor, Laboratory Manager Ben Angulo, spoke with plaintiff about the incident, warning her that she had previously made similar errors and that she needed to improve her accuracy. Plaintiff received a written warning from Angulo and Dr. Arana, a pathologist and Medical Director of the laboratory, that stated that the mislabeling was a serious error and that another infraction could lead to plaintiff's termination. The warning statement indicates that plaintiff refused to sign it. Plaintiff stated in her deposition that she did not recall receiving the written warning or refusing to sign it. On October 12, 2003, plaintiff performed a hematology test improperly. Mr. Angulo warned plaintiff that one more mistake could result in her termination.

On July 12, 2004, Mr. Angulo gave plaintiff a performance appraisal, which included a personal development plan. In the performance appraisal, Mr. Angulo told plaintiff that: (1) she needed to follow standard laboratory procedures and policies; (2) her performance was "constantly" evaluated and she needed to review her test results daily; and (3) she should review quality control and accuracy of her results daily. The appraisal also stated that plaintiff needed to improve her performance by August 12, 2004. Plaintiff signed this performance appraisal.

In August 2004, plaintiff participated in a survey conducted by the College of American Pathologists ("CAP"). Defendant's laboratory is regulated by CAP to ensure that the laboratory meets quality control standards as required by local, state and federal regulations. CAP requires defendant to undergo annual random quality assurance testing, or "CAP Surveys," to determine

the accuracy of laboratory technologists in testing patient specimens and recording their findings. CAP Surveys analyze each technologist's total rate of error based on the number of specimens the technologist analyzes accurately. For each survey, CAP mails blind specimens in a sealed container to defendant's laboratory. The laboratory technologist then subjects the blind specimens to tests and returns the specimens along with an assessment of the specimens for independent analysis by CAP. If the technologist correctly assessed the specimen, she would receive an acceptable rating for that specimen; if she did not correctly assess the specimen, she would receive a rating of unacceptable. CAP then analyzes each technologist's total rate of error and reports those results to defendant. Defendant then considers each technologists' error rate to determine whether it might jeopardize the laboratory's accreditation.

In the August 2004 CAP survey, plaintiff received a rating of "unacceptable" for nine specimens, the highest error rate of any technologist in defendant's laboratory. Mr. Angulo discussed the results with plaintiff and informed her that if her performance did not improve, defendant would be forced to terminate her. In March 2005, plaintiff participated in another CAP survey. Defendant received the results of the survey on April 11, 2005, which indicated that plaintiff received a rating of "unacceptable" for eighteen specimens. Again, plaintiff's error rate was the highest of any technologist in defendant's laboratory.

On March 29, 2005, Dr. Daniel Del Boccio, the then-Medical Director of the laboratory, wrote a letter to Edward Lorgeree, Vice President of Operations, to advise him of plaintiff's mistakes. Dr. Del Boccio recommended in his letter that defendant terminate plaintiff's employment. On May 5, 2005, Mr. Angulo and Mr. Lorgeree met with plaintiff and advised her of defendant's decision to terminate her employment.

3

At the time of her termination, plaintiff was 64 years of age. To fill the position left vacant by her termination, defendant made part-time laboratory technician Santhi Praduboss, who was 55 years of age, a full-time employee in May 2005.

## DISCUSSION

Defendant has moved for summary judgment, arguing that plaintiff has not established a prima facie case of discrimination. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assocs., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. See Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1983). The "mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

To state a claim for intentional discrimination under the ADEA, a plaintiff has two options: she may satisfy her burden of proof by offering direct evidence of discriminatory intent, or she may demonstrate such intent indirectly by following the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The first method requires direct evidence, such as statements indicating that the employment decision in question was made on a discriminatory basis, e.g., "I fired you because of your age." See, e.g., Robin v. Espo Eng'r Corp., 200 F.3d 1081, 1088 (7th Cir. 2000).

Because plaintiff presents no such direct evidence, the court assumes she is relying on the McDonnell Douglas formula. Under this framework, the plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 505 (1993). If the plaintiff is successful, a presumption of intentional discrimination arises. The burden then shifts to the defendant to come forward with evidence of a legitimate and non-discriminatory reason for the employment decision. At this point, the presumption of discrimination dissolves, and the burden shifts back to the employee to prove that the employer's proffered reasons are a pretext for discrimination. Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir. 1994). At all times, the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her. Hughes v. Brown, 20 F.3d 745, 747 (7th Cir. 1994).

To establish a prima facie case of discrimination in a termination case, the plaintiff must produce evidence that: (1) she was in the protected class; (2) she was performing according to

her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated, substantially younger employees or employees not in the protected class were treated more favorably. Biolchini v. General Elec. Co., 167 F.3d 1151, 1153-54 (7th Cir. 1999).

Defendant does not dispute that plaintiff can establish the first and third elements of her prima facie case. Plaintiff was 64 years of age at the time of her termination, placing her within the protected class of individuals 40 years of age and older. Defendant also acknowledges that plaintiff's termination was an adverse employment action.[2]

Defendant claims that plaintiff cannot meet the second element of her prima facie case because she was not performing according to her employer's legitimate expectations. Indeed, plaintiff admits that she made a specimen labeling error in July 2003 and a hematology test error in October 2003. Plaintiff also concedes that she had nine "unacceptable" ratings in the August 2004 CAP survey and 18 "unacceptable" ratings in the March 2005 CAP survey. Further, plaintiff admits that her errors could have compromised patient care and could have cost the

---

[2]Although the only discriminatory conduct alleged by plaintiff in her complaint is her termination, she does raise several other incidents of alleged discrimination in her deposition: 1) being required to return to work one day after a slip and fall accident in the laboratory in 2003; 2) "harassment" by an insurance company (not defendant) in 2004 by requesting payment for a bill related to an injury plaintiff sustained in the laboratory; and 3) being escorted from defendant's premises by security after she was terminated.

The court will not consider these events as adverse employment actions for three reasons. First, being asked to return to work and to pay a medical bill are not adverse employment actions as a matter of law because they did not in any way materially alter the terms and conditions of plaintiff's wages, job duties, or working conditions (Oest v. Illinois Dep't of Corrections, 240 F.3d 605, 612-13 (7th Cir. 2001)). Second, plaintiff concedes in her deposition that being escorted from the premises was not age-based harassment. Third, a plaintiff must file an EEOC Charge of Discrimination within 300 days of the allegedly unlawful adverse employment action to pursue a claim in federal court. 29 U.S.C.§ 626(d)(2); Dandy v. United Parcel Serv. Inc., 388 F.3d 263, 270 (7th Cir. 2004). In the instant case, plaintiff did not file her EEOC claim until May 11, 2005, rendering time-barred her allegations concerning her slip and fall accident.

hospital the accreditation of its laboratory.  Plaintiff stated in her deposition that she had no reason to doubt that defendant honestly believed her CAP survey results were unacceptable, and she acknowledged that she was warned several times that her performance could lead to her termination.  Plaintiff's own admissions, therefore, establish that she was not meeting defendant's legitimate employment expectations.

Defendant also contends that plaintiff cannot meet the fourth element of her prima facie case because she cannot identify another similarly situated, substantially younger employee or employee not in the protected class who was treated more favorably.  Employees are similarly situated if they have the same job description, are subject to the same performance standards, report to the same supervisor, and have comparable qualifications.  Radue v. Kimberly-Clark Corp., 219 F.3d 612, 619 (7th Cir. 2000).

First, plaintiff cannot identify a similarly situated employee because no other employee had such poor performance.  Although plaintiff claims that other people who made similar mistakes were not terminated, defendant has demonstrated that plaintiff was the only laboratory technologist employed by defendant to receive unacceptable CAP survey results for two consecutive years.

Second, plaintiff was not replaced by a substantially younger employee or an employee outside the protected class.  In her response to the motion for summary judgment, plaintiff asserts that she was replaced by Joy Williamson, who was 32 years of age.  In her deposition, however, plaintiff conceded that she has no personal knowledge that Ms. Williamson filled the vacancy left by her termination and that she was, in fact, "guessing" as to where both Ms. Williamson and Ms. Prabudoss were assigned after her termination.  Defendant did transfer Ms.

7

Williamson to a different shift after plaintiff's termination, but it filled plaintiff's vacancy by increasing the hours of Santhi Prabudoss, who was 55 years of age, from part-time to full-time. For these reasons, plaintiff cannot establish the fourth element of her prima facie case.

Even assuming that plaintiff could make a prima facie case, however, defendant still prevails on its summary judgment motion because it has articulated a legitimate, non-discriminatory reason for terminating plaintiff which plaintiff cannot rebut. As discussed above, defendant terminated plaintiff because she had an unacceptably high rate of error. Plaintiff concedes that doctors relied on her test results for patient care, and that high rates of error could jeopardize the laboratory's accreditation.

Plaintiff is simply unable to meet her burden of rebutting defendant's asserted reason for her termination. Her only evidence is her own unsupported assertion that her high error rates were the product of "foul play."[3] She has no information to support this claim, however, and she admits that the hospital has no reason to doubt the accuracy of the test results. As a matter of law, mere conclusory assertions of discrimination without supporting facts cannot defeat a motion for summary judgment. Hildebrandt v. Illinois Dep't of Natural Resources, 347 F.3d 1014, 1036 (7th Cir. 2003). Plaintiff therefore fails to meet her burden of rebutting defendant's reason for her termination.[4]

---

[3]Plaintiff also asks the court to consider her successful claim for unemployment benefits as evidence of age discrimination by defendant. The fact that the Illinois Department of Employment Security found that plaintiff had not engaged in "misconduct," or "wanton or willful disregard of the employer's interests," bears no relation to defendant's decision to terminate her for poor performance. As such, her unemployment compensation hearing is irrelevant to the instant case.

[4]Further, the demographics of defendant's laboratory employees, both during and after
(continued...)

**CONCLUSION**

For the reasons set forth above, plaintiff has failed to establish a prima facie case of age discrimination and cannot demonstrate that defendant's legitimate, non-discriminatory reason for her termination was pretextual. The court therefore grants the motion for summary judgment.

**ENTER: December 11, 2006**

_____
**Robert W. Gettleman
United States District Judge**

---

[4](...continued)
plaintiff's tenure in the laboratory, present additional evidence that race played no role in the decision to terminate plaintiff. While plaintiff worked in the laboratory, defendant employed twelve laboratory technologists. Eight of those twelve employees were over the age of forty, and six were over the age of fifty, including Mr. Angulo, plaintiff's supervisor, who was 58 when defendant terminated plaintiff's employment.